UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT MAURICE HAMPTON, JR.,

        Plaintiff,                    Case No. 1:14-cv-211

v.                                          Honorable Paul L. Maloney

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the civil action filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Robert Maurice Hampton presently is incarcerated at the Vienna Correctional Center in Vienna, Illinois, although the events about which he complains took place when he was incarcerated by the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception and Guidance Center (RGC) and the Carson City Correctional Facility (DRF). Plaintiff sues the following Defendants: MDOC; MDOC Director Daniel Heyns; MDOC Records Administrator Diana Judge; MDOC Parole Board Chairperson Thomas Combs; MDOC Central Time Computation Unit Analysts T. Grant and J. Krieghoff; MDOC employee Marilyn Martin; RGC Warden Heidi Washington; RGC Assistant Resident Unit Supervisor (Unknown) Boles; DRF Warden Willie O. Smith; the County of Berrien, Michigan; Berrien County Sheriff Paul Bailey; Berrien County Probation Department Supervisor Amber Glendening; and Berrien County Probation Department Agent Dino Yacobozzi.

Plaintiff was arrested on August 4, 1994, pursuant to an indictment filed in the United States District Court, Western District of Michigan, charging him with distribution of a controlled substance. On January 4, 1995, Plaintiff was sentenced to 156 months of incarceration and 5 years of supervised release with the Federal Bureau of Prisons. On November 18, 2006, while on supervised release, Plaintiff was arrested in Berrien County, Michigan and charged with distribution of marijuana.

On January 29, 2007, Plaintiff was found to be in violation of his supervised release. Plaintiff's supervised release was terminated and he was sentenced to 40 months of incarceration. Plaintiff was arraigned on the marijuana distribution charges (the marijuana case) in Berrien County on February 7, 2007, and pleaded guilty to those charges on March 30, 2007. Plaintiff was sentenced

to an indeterminate prison term of 15 to 48 months to run concurrently with his federal sentence. Plaintiff served his sentence at the Federal Correctional Institution in Ashland, Kentucky until he was released to a halfway house in April, 2009. Plaintiff was released from the halfway house on October 13, 2009, a little over two and a half years after he pleaded guilty to the marijuana charges.

Plaintiff alleges that during his incarceration, FCI Ashland contacted Berrien County to determine whether it wished to have a detainer placed on Plaintiff. Berrien County responded that it had no active warrants or pending charges against Plaintiff. Additionally, during his incarceration at FCI Ashland, Plaintiff alleges that he received two letters from the MDOC regarding parole. First, Plaintiff alleges that in or around April, 2008 he received a letter stating that he was paroled or on parole for 12 months. Next, Plaintiff alleges that sometime between December, 2008 and January, 2009 he received a parole discharge letter.

On June 27, 2012, nearly three years after Plaintiff was released from federal prison, a bench warrant was issued against Plaintiff in the marijuana case for failing to report to the MDOC to serve the 15 to 48 month sentence. In July, 2012,[1] Plaintiff was tracked down by Defendant Yacobozzi who explained to him that there was a paperwork problem in the marijuana case and Plaintiff needed to come to the Berrien County Circuit Court with his MDOC paperwork. Plaintiff tried but could not locate his MDOC paperwork. Plaintiff contacted FCI Ashland to obtain a copy of his inmate file and was told that his file had been archived and would take weeks to retrieve.

On July 31, 2012, Plaintiff, accompanied by his lawyer, appeared at the circuit court. Plaintiff explained that while he was in FCI Ashland he received MDOC paperwork stating that he

---

[1] In his complaint, Plaintiff identifies the year 2013, but it is clear from his discussion of these events that they took place during 2012 and not 2013.

had been paroled and that he was released from FCI Ashland because Berrien County did not have a detainer placed on him. Notwithstanding Plaintiff's comments, the circuit court stated that it understood that Plaintiff had been sentenced on March 30, 2007, and that Plaintiff's sentence had not been served, thus Plaintiff would not be free to leave and would be held without bond until the situation could be straightened out.

On August 6, 2012, a contempt-of-court hearing was held before the circuit court judge who originally sentenced Plaintiff. At that hearing, Plaintiff's lawyer gave him a letter from Defendant Judge. Defendant Judge had written the circuit court judge to advise him that, because Plaintiff was in Federal Bureau of Prison's custody at the time of sentencing, he was never delivered to the MDOC. As a result, the circuit court judge's sentence was not processed nor was the sentence served. Defendant Judge further wrote that although the MDOC had no authority over Plaintiff, it was asking the circuit court to bring Plaintiff into custody so that he could be delivered to the MDOC for processing. Defendant Glendening appeared at the contempt hearing and explained to the circuit court that Plaintiff would be taken into MDOC custody, his time served while in FCI Ashland would be calculated and if Plaintiff had served enough time to satisfy the minimum sentence he would be screened for parole or possibly even released. Plaintiff told the circuit court judge about the MDOC parole paperwork he had received while incarcerated at FCI Ashland. Defendant Glendening explained to the circuit court judge that she had not been able to locate any paperwork regarding Plaintiff being paroled by the MDOC. The circuit judge dismissed the contempt charge and remanded Plaintiff into the custody of the Berrien County Sheriff. On August 7, 2012, Plaintiff was taken to RGC, afterwhich he was transferred to DRF.

Plaintiff eventually received a letter from the Michigan Parole Board which explained that since Plaintiff had not serve his maximum sentence with the MDOC at the time he was released from federal custody, he should have returned to Michigan to finish his sentence. The Parole Board had reviewed its records and could not find any parole or discharge paperwork, despite Plaintiff saying he had received it. The Parole Board tentatively scheduled Plaintiff for an interview on September 17, 2012.

While in MDOC custody, Plaintiff obtained copies of the letter sent by FCI Ashland to Berrien County inquiring whether there was a detainer on Plaintiff and the response letter from Berrien County indicating that there was no detainer. Additionally, Plaintiff obtained an MDOC Parole Guideline Score Sheet from a parole interview on April 5, 2008.[2]

Plaintiff's parole hearing took place on September 20, 2012, a little less then two months after he was first taken into custody. Plaintiff explained his situation to the hearing officer who ended the interview telling Plaintiff he would look for Plaintiff's parole paperwork and get back to Plaintiff within 30 days. After almost 4 months, Plaintiff received a Parole Board Notice of Decision.[3] In all, Plaintiff alleges that he spent 7 ½ months in MDOC custody.

Plaintiff alleges claims for violation of his Fourth, Eighth and Fourteenth Amendment rights, and state law claims for false imprisonment, negligence, and violation of the Michigan Constitution. He seeks as relief compensatory and punitive damages.

---

[2] Although not stated expressly, it would appear that Plaintiff never obtained copies of any documents that would support his allegations that the MDOC paroled him and then released him from parole while he was in the custody of the Federal Bureau of Prisons.

[3] Plaintiff does not reveal what the parole board had decided. Presumably, the parole board decided that Plaintiff should receive parole, as he was released sometime thereafter.

Specifically, Plaintiff alleges that Defendants' failure to investigate his many complaints that his arrest and incarceration were unlawful violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to substantive due process.

Additionally, Plaintiff alleges that Defendants' failure to provide a legitimate hearing or other adequate process by which he could challenge his unlawful imprisonment violated his right to procedural due process.

Finally, on March 31, 2014, Plaintiff filed an amendment to his complaint (docket #7) alleging a claim for unlawful arrest and unreasonable seizure under the Fourth Amendment. Because Plaintiff's complaint has not been served and no responsive pleading is currently due, he is free to amend it. *See* FED. R. CIV. P. 15. Generally, however, a plaintiff should file an amended complaint alleging all claims upon which he seeks relief. Under the circumstances present here, the Court will screen Plaintiff's complaint as amended without requiring Plaintiff to first file an amended complaint.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff challenges his incarceration by the State of Michigan. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that

custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's action challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).[4]

To the extent Plaintiff seeks monetary relief for alleged violations of his constitutional rights, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

---

[4]The Court notes that Plaintiff is no longer incarcerated nor is he a parolee with the MDOC, so habeas relief is unavailable to him. Nevertheless, because he challenges the fact that the MDOC confined him at all, he should have brought his claims by way of a petition for writ of habeas corpus while he was in custody.

determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted).

Neither Plaintiff's conviction nor his sentence have ever been reversed, declared invalid or called into question by a state or federal court, or expunged by executive order. *See id.* Nevertheless, Plaintiff's claims clearly call into question the validity of his conviction and sentence. Notably, Plaintiff does not claim that he served more then the 48 months maximum time for which he was sentenced. What Plaintiff does claim is that his arrest and imprisonment were illegal and unconstitutional. However, to make such a claim, Plaintiff would first have to establish that his conviction and sentence were found to be invalid. This he has not done. Consequently, his federal constitutional claims are barred under *Heck*.

With respect to Plaintiff's claims under state law, these claims must be dismissed as well. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v.*

*HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal constitutional claims in his complaint as amended (docket ##1, 7) will be dismissed for failure to state a claim pursuant to 28 U.S.C. §1915A(b).  Plaintiff's state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

A Judgment consistent with this Opinion will be entered.


Dated: April 18, 2014             /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  Chief United States District Judge